**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VALLA CONSTRUCTION, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Case No. 5:17-cv-00007-OLG** |
| | § | |
| **THE CINCINNATI INSURANCE** | § | |
| **COMPANY AND BRENNAN J.** | § | |
| **LOWRY** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT/COUNTER-PLAINTIFF CINCINNATI'S ORIGINAL ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, The Cincinnati Insurance Company ("Cincinnati"), Defendant/Counter-Plaintiff in the above-entitled and numbered cause, and files this its Original Answer and Counterclaim for Declaratory Relief in response to Plaintiff's Original Petition ("Petition"), filed by Plaintiff Valla Construction, Inc. ("Valla Construction" or "Plaintiff"), and in support thereof would respectfully show unto the Court as follows:

### CINCINNATI'S ORIGINAL ANSWER

Cincinnati responds to Plaintiff's Original Petition paragraph by paragraph as follows:

**I.**
### CLAIM FOR RELIEF

1.      To the extent Cincinnati is required to respond, Cincinnati is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph **I.** of the Petition, but does admit Plaintiff makes such allegations.  Cincinnati further admits Plaintiff alleges it is seeking $100,000.00 or less for breach of the duty to defend and breach of

the duty to indemnify.  The breaches allegedly resulted in a default judgement.  Consequently, it is clear that Plaintiff's claims for breach of contract, breach of the duty of good faith and fair dealing, violation of the DTPA and Texas Insurance Code (including exemplary and additional damages), and attorneys' fees, allege an amount in controversy in excess of $75,000.00.

## II.
### DISCOVERY

2.    Cincinnati denies that this case is governed by Texas Rule of Civil Procedure 169 and that it is governed by discovery Level II as alleged in paragraph **II.** of the Petition.  Because this case has been removed to federal court, this case is governed by the Federal Rules of Civil Procedure.

## III.
### PARTIES

3.    To the extent Cincinnati is required to respond, Cincinnati is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph **III.** of the Petition pertaining to Plaintiff being a Texas Corporation.

Cincinnati admits that it is an Ohio corporation organized and existing under the laws of Ohio. Cincinnati admits that its principle place of business is in Fairfield, Ohio. Cincinnati admits that it is a foreign insurance company that conducts business in the State of Texas, and that National Registered Agents may accept service of process for Cincinnati in the State of Texas.

By way of further answer, Cincinnati is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph **III.** of the Petition pertaining to Lowry.

## IV.
### VENUE

4.      Cincinnati admits that when this action was pending in state court, venue was proper under Section 15.002 of the Texas Civil Practice and Remedies Code, not Section 15.001 as alleged by Plaintiff.  Cincinnati further admits that when this action was pending in state court, venue was proper in Bexar County, Texas, as alleged in paragraph **IV.** of the Petition. Cincinnati denies all remaining allegations in paragraph **IV.** of the Petition.

## V.
### FACTUAL BACKGROUND

5.      To the extent Cincinnati is required to respond, Cincinnati is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first three sentences of paragraph **V.** of the Petition. Cincinnati admits that on February 26, 2016, Valla Construction forwarded Atlas' demand letter to Cincinnati.  Cincinnati admits that a file marked copy of Plaintiff's Original Petition in that lawsuit styled *Atlas Floor Co., Inc. v. Valla Construction, Inc.*, Cause No. 2016CV00540, in the county court at law #10 ("Atlas Lawsuit"), was filed on February 1, 2016. *See* Exhibit A.  Cincinnati admits that on February 26, 2016, Valla Construction forwarded the lawsuit to Cincinnati. Cincinnati admits that on March 24, 2016, a default judgment was taken against Valla Construction in the Atlas Lawsuit.  By way of further answer, Cincinnati denies the remaining allegations in paragraph **V.** of the Petition.

## VI.
### CONDITIONS PRECEDENT

6.      Cincinnati denies the allegations in paragraph **VI.** of the Petition.

## VII.
### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

7.      Cincinnati avers that the insurance policy issued by Cincinnati to Valla Construction, policy number EPP 017 00 03 ("Policy"), speaks for itself.  Cincinnati denies that

Lowry was a party to the Policy.  Cincinnati denies that it was contractually required to provide Valla Construction with a defense or indemnity relative to the Atlas Lawsuit, pursuant to the terms and conditions of the Policy. By way of further answer, Cincinnati denies the remaining allegations in paragraph **VII.** of the Petition.

### VIII.
### SECOND CAUSE OF ACTION:
### BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

8.      Cincinnati denies the allegations in paragraph **VIII.** of the Petition.

### IX. - XIV.
### THIRD CAUSE OF ACTION:
### DECEPTIVE TRADE PRACTICES ACT – CONSUMER PRACTICES ACT

9. – 14.   Cincinnati denies the allegations in paragraph **IX.** and **XIV.** of the Petition.

### XV.
### VIOLATIONS OF CHAPTER 541 OF THE TEXAS INSURANCE CODE

15.      Cincinnati denies the allegations in paragraph **XV.** of the Petition.

### XVI.
### VIOLATIONS OF CHAPTER 542 OF THE TEXAS INSURANCE CODE –
### UNFAIR CLAIM PRACTICES ACT

16.      Cincinnati denies the allegations in paragraph **XVI.** of the Petition.

### XVII.

17.      Cincinnati denies the allegations in paragraph **XVII.** of the Petition.

### XVIII.
### PRODUCING AND PROXIMATE CAUSE

18.      Paragraph **XVIII.** of the Petition consists of conclusions of law, to which no response from Cincinnati is required.  By way of further answer, if same be necessary, Cincinnati denies the actual allegations in paragraph **XVIII.** of the Petition.

### XIX.
### ATTORNEYS' FEES

19.      Paragraph **XIX.** of the Petition consists of conclusions of law, to which no

response from Cincinnati is required. By way of further answer, if same be necessary, Cincinnati is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph **XIX.** of the Petition.

## XX.
### DAMAGES

20.    Paragraph **XX.** of the Petition consists of conclusions of law, to which no response from Cincinnati is required. By way of further answer, if same be necessary, Cincinnati is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph **XX.** of the Petition.

## XXI.
### PRAYER

21.    Cincinnati denies that Valla Construction is entitled to any relief requested in paragraph **XXI.** of the Petition.

## CINCINNATI'S AFFIRMATIVE DEFENSES

22.    Pursuant to Federal Rules of Civil Procedure 12(b)(6), some or all of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.

23.    Cincinnati *did not* have a duty to defend and *does not* have duty to indemnify Valla under the terms and conditions of the Policy for the damages being sought or awarded in the Atlas Lawsuit because said damages are not because of "bodily injury," "property damage," or "personal and advertising injury" caused by an "occurrence" as those terms are defined by the Policy and interpreted under Texas law.

24.    Plaintiff's claims under the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA") are not ripe and/or justiciable because Plaintiff has failed to comply with the statutory notice provisions under Texas Business & Commerce Code Section 17.505. Accordingly, those claims must be abated pursuant to Texas Business & Commerce Code

Section 17.505(c).

25.    Plaintiff's claims under the DTPA are not ripe and/or justiciable because Plaintiff has not met all statutory conditions precedent to bringing its DTPA claims against Defendant.

26.    Cincinnati expressly reserves the right to amend its Original Answer and to assert additional affirmative defenses that it becomes aware of during the course of discovery in this action.

## CINCINNATI'S REQUEST FOR JURY TRIAL

27.    Pursuant to Federal Rule of Civil Procedure 38, Defendant Cincinnati demands a trial by jury.

## CINCINNATI'S COUNTERCLAIM

28.    In addition to the foregoing allegations, Cincinnati, now acting as Counter-Plaintiff, petitions this Court, pursuant to the FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§2201 *et seq.* and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE, for consideration and a declaration of Cincinnati's obligations, if any, under the Cincinnati Policy to defend and/or indemnify Plaintiff in the Atlas Lawsuit. In support of its Counterclaim for Declaratory Relief, Cincinnati respectfully shows the Court the following:

29.    Plaintiff/Counter-Defendant Valla Construction, Inc. has appeared and answered in this matter. As such, no service of process is necessary as to Valla Construction, Inc. Defendant Lowry has not been served with Plaintiff's Petition and has not yet made an appearance in this matter. Service of process, therefore, is being requested for Defendant Brennan J. Lowry.

### A.
### Justiciable Controversy

30.    An actual controversy exists between the parties hereto within the meaning of 28

U.S.C. §2201 *et. seq.,* and this Court is vested with the power in the instant case to declare and adjudicate the rights and obligations of the parties to this action with reference to the issues raised by Cincinnati's Counterclaim for Declaratory Relief.

**B.**
**The Cincinnati Policy**

31.     Cincinnati seeks a declaration that it *did not* have a <u>duty to defend</u> and *does not* have a <u>duty to indemnify</u> Valla relative to the Atlas Lawsuit, pursuant to the terms and conditions of the Cincinnati Policy.  *See generally* Exhibit B.

32.     According to the terms and conditions of the Commercial General Liability ("CGL") portion of the Policy:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)**     The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

        **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgment or settlements under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; **SECTION I – COVERAGE B. PERSONAL AND ADVERTISING**

**INJURY LIABILITY**; or medical expenses under **SECTION I – COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

    . . .

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.** **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of

judgment or settlements under **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; **SECTION I – COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**; or medical expenses under **SECTION I – COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**.

**b.**     This insurance applies to "personal and advertising injury" only if:

**(1)**     The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)**     The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)**     Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d**. below, that the offense had been committed or had begun to be committed, in whole or in part.

. . .

Exhibit B, Cincinnati 0029 and 0035.

33.     To assist in the interpretation and application of such coverage, the CGL portion

contains the following definitions:

**SECTION V – DEFINITIONS**

**1.**     "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article.  For purposes of this definition:

**a.**     Notices that are published include material placed on the Internet or on similar electronic means of communication; and

      **b.**     Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

. . .

**4.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

**6.**     "Coverage territory" means:

      **a.**     The United States of America (including its territories and possessions), Puerto Rico and Canada;

      . . .

      **c.**     All other parts of the world if the injury or damage arises out of:

         . . .

                             . . .

         **(3)**     "Personal and advertising injury" offenses that take place through the internet or similar electronic means of communication.

         provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

. . .

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

      **a.**     False arrest, detention or imprisonment;

      **b.**     Malicious prosecution;

      **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises . . .

    **d.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization . . .

    **e.**      Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**      The use of another's advertising idea in your "advertisement"; or

    **g.**      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

**20.**    "Property damage" means:

    **a.**      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit B, Cincinnati. 0044 - 0048.

34.    According to the terms and conditions of the Commercial Umbrella Liability ("UL") portion of the Policy:

**SECTION I – COVERAGE**

  **A.**  **Insuring Agreement**

    1.    We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

        **a.**    Which is in excess of the "underlying insurance"; or

        **b.**    Which is either excluded or not insured by "underlying insurance".

    **2.**    This insurance applies to "bodily injury", "personal and

advertising injury" or "property damage" only if:

    **a.**    The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **b.**    The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

. . .

  **C.**    **Defense and Supplementary Payments**

    **1.**    We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal or advertising injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

        **a.**    The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

        **b.**    Damages are sought for "bodily injury", "personal and advertising injury" or "property damage" which are not covered by "underlying insurance" or other insurance.

. . .

Exhibit B, Cincinnati 0082 and 0088.

    35.    To assist in the interpretation and application of such coverage, the UL portion contains the following definitions:

**SECTION V – DEFINITIONS**

**1.**    "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article.  For purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet

or on similar electronic means of communication; and

    **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

. . .

**4.**    "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

. . .

**6.**    "Coverage territory" means anywhere.

. . .

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that results in "bodily injury" or "property damage"; or

**17.**    "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    Abuse of process:

    **d.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **e.**    Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **f.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **g.**    The use of another's advertising idea in your "advertisement";

    **h.**     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

    **i.**     Discrimination, unless insurance coverage therefor is prohibited by law or statute.

. . .

**20.**   "Property damage" means:

    **a.**     Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

    **b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**24.**   "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I – COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

**25.**   "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

Exhibit B, Cincinnati 0094 - 0099.

## C.
## Atlas Lawsuit

36.    The Underlying Lawsuit arises out of a suit on sworn account. *See generally,* Exhibit A. Specifically, the Petition, which was filed on February 1, 2016, alleges in relevant part the following:

    4.    Facts. In the usual course of business, Plaintiff sold to Defendant VALLA CONSTRUCTION, INC. one or more items of goods, wares, merchandise, or services, as shown on the attached or account. Defendant accepted each item and became

**Defendants/Counter-Plaintiffs' Original Answer and Counterclaim for Declaratory Relief**
28434/533859/jlk

bound to pay Plaintiff the designated price, which is a reasonable, usual, and customary price for such an item.   The statement of account is attached as <u>Exhibit "A"</u> and incorporated by reference.  This account represents a transaction or series of transactions for which a systematic record has been kept.

5.      Debt.  Defendant has defaulted by failing to make payments on the account.  The principal balance due Plaintiff on the account is $12,561.87 after all just and lawful offsets, payments, and credits have been allowed.  Plaintiff has demanded that Defendant pay this amount but Defendant has not done so.

6.      Quantum Meruit Or Quantum Valebant.  Defendant received the benefits of the items thereby becoming liable for the reasonable value thereof.

Exhibit A, Cincinnati  0003 – 0004.

37.      To that end, Plaintiff Atlas Floor Co., Inc. sought judgment against Valla for the amount due on the account, together with all reasonable and necessary attorneys' fees, costs, and interest allowed by law.  Exhibit A, Cincinnati 0003 – 0004.

### D.
### Basis for Declaratory Relief

38.      Based on the Underlying Petition as alleged, Cincinnati did not have a duty to defend Valla in the Atlas Lawsuit because the alleged damages are not because of "bodily injury," "property damage," or "personal and advertising injury" caused by an "occurrence" as those terms are defined by the Policy and interpreted under Texas law.

39.      Based on the Underlying Petition as alleged, Cincinnati does not have a duty to indemnify Valla for any damages awarded against Valla in the Atlas Lawsuit because the alleged damages are not because of "bodily injury," "property damage," or "personal and advertising injury" caused by an "occurrence" as those terms are defined by the Policy and interpreted under Texas law.

**E.**
**Request for Declaratory Relief**

40.     Cincinnati repeats and re-alleges the allegations set forth in paragraphs 27-38 as if fully set forth herein.

41.     Pursuant to the FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§2201 *et seq.* and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE, Cincinnati is entitled to a declaratory judgment from this Court declaring that:

   (A)     Cincinnati did not have a duty to defend Valla Construction, Inc. under the terms and conditions of the Cincinnati Policy, for the damages being sought by Atlas Floor Co. in the Atlas Lawsuit; and

   (B)     Cincinnati does not have a duty to indemnify Valla Construction, Inc., under the terms and conditions of the Cincinnati Policy, for the damages that were awarded against Valla in the Atlas Lawsuit.

**WHEREFORE, PREMISES CONSIDERED**, Defendant Cincinnati prays that Plaintiff takes nothing by this suit; that all relief requested by Plaintiff be denied, and all of Plaintiff's causes of action against Cincinnati be dismissed with prejudice to the refiling of same; that this Court enter the declarations requested above, and award Cincinnati all costs of suit and attorneys' fees; and said Defendant further prays for such other and further relief, both general or special, at law or in equity, to which he may show himself to be justly entitled.

Respectfully submitted,

/s/ George L. Lankford
**GEORGE L. LANKFORD**
Attorney of Record
State Bar No. 11934800
**MARC H. FANNING**
State Bar No. 06805400
**FANNING HARPER MARTINSON**
**BRANDT & KUTCHIN**
A Professional Corporation
Two Energy Square
4849 Greenville Ave., Suite 1300

Dallas, Texas 75206
(214) 369-1300
(214) 987-9649 fax

**ATTORNEYS FOR DEFENDANTS
THE CINCINNATI INSURANCE
COMPANY AND BRENNAN J. LOWRY**

## CERTIFICATE OF SERVICE

This is to certify that on the 13th day of January, 2017, I electronically filed the foregoing document with the clerk of the Court for the United States District Court, Western District of Texas, using the electronic case filing system of the Court, serving copies of the foregoing to all attorneys of record.

/s/ George L. Lankford
**GEORGE L. LANKFORD**